CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 23 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KHALIF ABDUL-MATEEN, | ) | CASE NO. 7:11CV00051 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| VICKI PHIPPS, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Khalif Abdul-Mateen, a Virginia inmate proceeding pro se, filed this civil rights action, alleging that during the Muslim Ramadan fast in August and September 2010, prison officials at Red Onion State Prison violated his right to free exercise of his religious beliefs under the First Amendment to the United States Constitution and 42 U.S.C. § 1983, and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq. Specifically, Abdul-Mateen alleges that officials refused to change his medication schedule so that he could receive his prescribed medications during daylight hours in keeping with his religious fast.[1] One defendant, Nurse Vicki Phipps, filed a motion to dismiss, to which Abdul-Mateen responded, making the matter ripe for disposition. The court concludes that the motion to dismiss must be granted in part and denied in part.

---

[1] Abdul-Mateen names the following officials as defendants to this lawsuit: Warden Tracy Ray; Fred Schilling, Director of the Office of Health Services ("OHS") for the Virginia Department of Corrections ("VDOC"); and Vicki Phipps, a supervisory nurse at Red Onion. Ray and Schilling, who are represented by separate counsel, have filed a motion for summary judgment. Abdul-Mateen has also filed a motion for partial summary judgment as to liability and a motion to amend his demand for relief in the complaint. The court granted Nurse Phipps' motion to stay her obligation to respond to Abdul-Mateen's motion for summary judgment, pending the court's decision on her motion to dismiss.

## I. Background

Abdul-Mateen is of the Muslim religious faith. He asserts that as an adherent of Islam, he must abstain from partaking in any food or water during daylight hours during the month-long fasting period known as Ramadan. Abdul-Mateen states that the Ramadan fast is one of the "five pillars of Islam . . . prescribed by Allah-God in the Holy Qur'an" for practicing self-restraint. (ECF No. 1, p. 3.)

Abdul-Mateen arrived at Red Onion in 2004 and was approved under prison policies to participate in the Ramadan fast beginning in 2005. Abdul-Mateen has been diagnosed with hypertension, high blood pressure, and high cholesterol, and takes daily prescription medication to manage these conditions. From 2005-2009, Red Onion medical staff, under the supervision of Warden Ray and Nurse Phipps, provided these medications to him in accommodation of his Ramadan fast, bringing him his medication before sunrise and after sunset. Without notice to Muslim inmates, Red Onion staff changed this practice for Ramadan 2010.

The Ramadan fast in 2010 began on August 11. At 3:30 p.m., a nurse came to Abdul-Mateen's cell door with his scheduled dose of prescription medications. When Abdul-Mateen protested that the timing of the pill call violated his Ramadan fast, the nurses told him that according to a memo from some Muslim authority, taking prescribed medication with a small amount of water during daylight hours would not be considered a violation of the Ramadan fast. The nurses told Abdul-Mateen that he would have to address this scheduling issue with their boss, Nurse Phipps.

Abdul-Mateen wrote an informal complaint on August 11, 2010, stating that taking any water or medication during the daytime caused him to break his fast, regardless of what other information officials may have received about Muslim fasting requirements. Abdul-Mateen

2

expressly asked the medical staff to change the pill schedule to accommodate his practice of the Ramadan fast. Nurse Phipps replied to Abdul-Mateen's informal complaint by circulating a memorandum which stated:

> The Muslim Chapter Services of Virginia has advised the [VDOC] that those participating [in Ramadan] would not break their fast by taking their medication with a small amount of water. Therefore, based on this information no time change in pill pass was necessary."

(ECF No. 2, p. 3.)

On August 18, 2010, Abdul-Mateen filed a regular grievance, explaining that taking oral medication with any amount of water during daylight hours violated his Ramadan fasting obligations under the Qur'an. The grievance asked Red Onion officials to return immediately to the medication schedule used during Ramadan in previous years and to provide Abdul-Mateen's medication during nonfasting hours. The warden deemed the grievance unfounded, stating that for the reason outlined in Nurse Phipps' response to the informal complaint, no change to the pill call schedule during Ramadan was necessary. On appeal, the OHS deemed the grievance unfounded, relying on information from Muslim Chapter Services of Virginia ["MCSV"] that inmates who are ill may be exempt from fasting and should continue to take their scheduled medication with a small amount of water during the daylight hours of Ramadan. Despite Abdul-Mateen's repeated requests for adjustment of the pill call schedule, staff made no change to the schedule during Ramadan 2010.

Abdul-Mateen wrote to MCSV about the matter. In November 2010, after completion of the Ramadan fast, he received a reply from the organization, stating: "We, as Muslims, have a firm belief that any amount of water swallowed intentionally [during daylight hours] will invalidate the [Ramadan] fast." (ECF No. 2, p. 7.) The response expressly denied that anyone

3

from MCSV had said otherwise to anyone.[2] The MCSV response indicated that VDOC administrative officials and Chaplain Services of America denied any knowledge of who might have communicated this misinformation that taking oral medication with water during the day complied with Ramadan fasting principles. The MCSV response stated the organization intended to work with VDOC officials to ensure future accommodation of fasting requirements for all inmates taking prescribed medications and indicated: "we have been promised that this incident will not be repeated in the future." (ECF No. 2, p. 7.)

Abdul-Mateen asserts that by failing to change the pill call schedule during Ramadan 2010, prison officials knowingly forced him to choose between following the precepts of his religious beliefs and foregoing his prescription medication at the risk of suffering adverse health consequences or accepting his medication in violation of his religious principles. Abdul-Mateen contends that the pill call policy thus placed a substantial burden on his religious beliefs, in violation of his rights under the United States Constitution and RLUIPA, and for that injury, he seeks declaratory and injunctive relief and compensatory and punitive damages.[3]

---

[2] The MCSV response to Abdul-Mateen indicates that "anything (food, water, medication), no matter how small the quantity may be, intentionally taken orally will break the fast." (ECF No. 2, p. 8.) The response also indicates that when an inmate's treating physician determines that the inmate's health would be at risk if he does not receive his medication as normally scheduled during daylight hours, this inmate should not fast, but may "make up" the fasting practice after his health returns to normal. (Id. at 9.) Also, if a Muslim believer's health will not permit fasting, he may feed a poor person ("give Fidya") as an alternative, but if he cannot afford to give Fidya, he is still exempt from fasting. (Id.)

[3] In an "Affidavit" (ECF No. 43), submitted months after his response to Nurse Phipps' motion to dismiss, Abdul-Mateen raises an entirely new claim regarding free exercise of his Ramadan beliefs. Specifically, Abdul-Mateen claims that in 2011, Red Onion scheduled Ramadan fasting accommodations for 30 days, despite the fact that under the Muslim calendar, the fast lasts for only 29 days in some years, including 2011. He asserts that by extending the fast an extra day, Red Onion officials delayed Abdul-Mateen's Eid celebration to close the fast. Abdul-Mateen does not move to amend his complaint to add this claim to his lawsuit and does not allege that any of the defendants to this lawsuit was personally involved in this alleged infringement on his religious practice. Therefore, the court does not consider this late-filed issue to be part of the case before the court here.

4

## II. Discussion

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. See, e.g., Bell Atl. Corp. v. Twombly, 553 U.S. 544, 553-63 (2007). In addressing a Rule 12(b)(6) motion, "[t]he court may also consider exhibits attached to the complaint." United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)). The court must grant the motion to dismiss if the complaint and attachments does not allege "enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). In conducting its review, a court must construe the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations omitted).

An official can be held liable under § 1983 in his individual capacity only if his "own individual actions . . . violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2008). "[T]here is no vicarious liability under § 1983." Revene v. Charles County Comm's, 882 F.2d 870, 874 (4th Cir. 1989).

### B. Initial Matters

The court grants the motion to dismiss as to Abdul-Mateen's claim that Nurse Phipps' actions constituted deliberate indifference to his serious medical needs, in violation of the Eighth Amendment prohibition against cruel and unusual punishment. The complaint contains no factual averments to support such a claim. Abdul-Mateen asserts in the complaint that officials provided all prescribed medications during Ramadan. Thus, Abdul-Mateen cannot show any

5

deliberate indifference to his serious medical needs, as required to state an Eighth Amendment claim regarding medical care. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

The court also finds that Abdul-Mateen cannot prevail in some aspects of his religious rights claims. Neither a state nor its officers acting in their official capacities are persons subject to suit for monetary damages under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Thus, to the extent that Abdul-Mateen sues Nurse Phipps in her official capacity for monetary damages under § 1983, the court will grant the motion to dismiss,

Similarly, Nurse Phipps is not subject to suit for monetary damages under RLUIPA. This statute does not authorize a private cause of action for money damages against prison personnel for actions taken in their official capacities, because they have immunity against such claims under the Eleventh Amendment. Sossamon v. Texas, __U.S.__, 131 S. Ct. 1651, 1660 (April 20, 2011); Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006). Likewise, Abdul-Mateen cannot assert RLUIPA claims for money damages against Nurse Phipps in her individual capacity in reliance on the Spending Clause facet of the statute.[4] Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009). Consequently, the court grants Nurse Phipps' motion to dismiss as to all of Abdul-Mateen's RLUIPA claims against her for monetary relief.

The Eleventh Amendment does not bar Abdul-Mateen's claims under RLUIPA for injunctive relief against Nurse Phipps in her official capacity. See Lovelace v. Lee, 472 F.3d 174, 193-94, 202 (4th Cir. 2006). Nor does it bar plaintiff's claims under the First Amendment for monetary relief against the defendants in their individual capacities or his claims for injunctive relief in their official capacities. See Id. at 193-94. Therefore, the court denies the

---

[4] Neither the Fourth Circuit nor the United States Supreme Court has yet addressed the question of whether a RLUIPA claim could arise under the Commerce Clause portion of the statute. See Rendelman, 569 F.3d at 189. Abdul-Mateen, however, fails to allege any facts suggesting that his claims against Nurse Phipps could qualify as actionable claims under the Commerce Clause section of RLUIPA.

6

motion to dismiss as to these aspects of Abdul-Mateen's religious rights claims for the reasons that follow.[5]

## C. Religious Rights Claims

### 1. Applicable Law

The First Amendment protects an inmate's right to the free exercise of religion. U.S. Const. amend. I; Cruz v. Beto, 405 U.S. 319, 322 (1977). A sincere personal religious belief warrants this First Amendment protection, regardless of whether the belief is mandated by a particular established religion or held by a majority of the believers within a religion. Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 716 (1981) (finding that federal courts are not to sit as arbiters of religious orthodoxy).

To state a claim that prison officials or regulations have violated an inmate's right to free exercise of religion, a plaintiff must prove that he holds a sincere religious belief, as opposed to a secular preference, and that the official action or regulation substantially burdened his exercise of that belief.[6] Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). The Supreme Court defines a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand," Sherbert v. Verner, 374 U.S. 398, 404 (1963). Plaintiff must prove not only that defendants placed a substantial burden on his ability to

---

[5] Some information in the record suggests that in the future, Red Onion officials may adjust the pill pass schedule to accommodate the Ramadan fast schedule, as they did for several years prior to Ramadan 2010 and again in 2011. Without direct evidence of a policy change, however, the court cannot find at this time that Abdul-Mateen's demand for injunctive relief is moot.

[6] The defendants have not questioned the sincerity of Abdul-Mateen's stated belief that he must fast completely during the daylight hours of Ramadan.

7

exercise his religious practice, but also that they knowingly did so; inadvertent or negligent interference with an inmate's religious practice does not rise to constitutional proportions. Lovelace, 472 F.3d at 194.

In enacting RLUIPA, Congress granted heightened protection to inmates' religious exercise. The statute defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc–5(7)(A). To bring a RLUIPA challenge, the inmate must demonstrate a substantial burden on his religious exercise, specifically, that an official state action, "through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace, 472 F.3d at 187 (quoting Thomas, 450 U.S. at 718). In assessing this burden, courts must not judge the significance of the particular belief or practice in question. Id. at 187 n.2 (citing Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005) (noting that RLUIPA "bars inquiry into whether [the] belief or practice is 'central' to a prisoner's religion."). Once the inmate demonstrates that prison officials pursued a policy, knowing that it placed a substantial burden on inmates' sincerely held religious practice, Lovelace, 472 F.3d at 194 (finding that RLUIPA does not reach negligent violations of inmates' religious practices), the defendant must come forward with evidence demonstrating that the policy furthers a compelling state interest by the least restrictive means. Cutter, 544 U.S. at 723.

## 2. Prima Facie Claims

Nurse Phipps asserts that all claims against her should be dismissed because Abdul-Mateen does not allege facts showing that the policy regarding when to conduct pill call during Ramadan 2010 emanated from Nurse Phipps. Moreover, she contends that Abdul-Mateen's allegations do not demonstrate that Nurse Phipps' role in challenged pill call scheduling

8

constituted a "conscious act, rather than mere negligence,"[7] which does not give rise to a constitutional claim or a claim under RLUIPA. (ECF No. 20, p. 4.) (quoting Shaheed v. Winston, 885 F. Supp. 861, 868 (E.D. Va. 1995), aff'd, 161 F.3d 3 (4th Cir. 1998)).

Construing the facts in the light most favorable to Abdul-Mateen, the court concludes that he has stated claims under § 1983 and RLUIPA that Nurse Phipps knowingly failed to accommodate his Ramadan beliefs. Abdul-Mateen alleges that other nurses told him Nurse Phipps was the person to ask about changing the Ramadan medication schedule. On the first day of the fast, Abdul-Mateen stated in his informal complaint that taking medication during the fast violated his personal religious beliefs, explained that any information taking a contrary position on Ramadan fasting requirements was invalid under the Qur'an, and asked for a schedule change to accommodate those beliefs. Phipps replied to that informal complaint, stating no change to the pill schedule was "necessary" because taking medication during the day did not violate Muslim beliefs according to information the VDOC had received from Muslim authorities. Abdul-Mateen also presents evidence that the MCSV has denied making the statement on which Phipps relied in refusing to change the pill schedule.

Abdul-Mateen's allegations do not merely attempt to hold Phipps liable for a policy over which she had no control or for a policy that she based on negligent interpretation of the OHS information. Rather, the court finds that Abdul-Mateen has stated a prima facie case under Iqbal, 129 S. Ct. at 1949, that Nurse Phipps was personally involved in the decision not to alter the pill pass schedule for Ramadan 2010, that she knowingly based this decision on contested information about Muslim fasting requirements, and that she refused to change this policy after

---

[7] Except for her arguments of no personal and intentional involvement, Nurse Phipps does not argue that Abdul-Mateen's allegations fail to satisfy the elements necessary to state actionable claims under the First Amendment and RLUIPA.

9

the first day of Ramadan in knowing violation of Abdul-Mateen's personal Ramadan fasting beliefs. Therefore, the court concludes that Abdul-Mateen has stated actionable claims against Nurse Phipps under both the First Amendment and RLUIPA.

### 3. Qualified Immunity

Nurse Phipps argues that Abdul-Mateen's claims for monetary damages against her should be dismissed on the ground of qualified immunity. She argues that no reasonable officer would have known that maintaining the normal pill call schedule during Ramadan, in reliance on information Red Onion received from OHS and MCSV, violated Abdul-Mateen's rights under the First Amendment or RLUIPA. The court cannot agree.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and (b) whether that right was clearly established. Saucier, 533 U.S. at 206.

The court has concluded that Abdul-Mateen has stated actionable claims under RLUIPA and the First Amendment, in satisfaction of the first element of the qualified immunity analysis. Moreover, the Lovelace decision established that denying a Muslim inmate the ability to observe Ramadan fasting principles placed a substantial burden on his religious practice. See Lovelace, 472 F.3d at 188-89. For many years before Ramadan 2010, prison officials had understood that Ramadan principles required fasting Muslims to forego intake of all food and water during daylight hours and had accommodated those beliefs by altering meal and medication schedules.

10

Of course, traditional accommodations may require reasonable alterations, based on new and reliable information. The well pleaded allegations of Abdul-Mateen's complaint state that Abdul-Mateen informed Nurse Phipps on the first day of Ramadan that the instruction she claimed to have received from MCSV was inaccurate and that taking medication during Ramadan fasting hours violated Abdul-Mateen's personal beliefs under the Qur'an. In the face of these specific facts, a reasonable official would have known that refusing to alter the Ramadan pill schedule violated Abdul-Mateen's constitutional and statutory right to free exercise of his sincere religious beliefs. Therefore, the court cannot find at this stage of the litigation that Nurse Phipps is entitled to qualified immunity as to Abdul-Mateen's claims for monetary damages under the First Amendment.[8]

For the reasons stated, the court concludes that Nurse Phipps' motion to dismiss must be granted in part and denied part. Specifically, the court denies the motion as to Abdul-Mateen's claims for injunctive relief under 42 U.S.C. § 1983 and RLUIPA against Nurse Phipps in her official capacity, and as to his claims for monetary damages under § 1983 against Nurse Phipps in her individual capacity, for violating his right to free exercise of his religious beliefs. The court grants the motion to dismiss as to all other aspects of Abdul-Mateen's claims.

Defendants Ray and Schilling filed affidavits in support of their motion for summary judgment, which is now ripe for disposition after completion of discovery. In the interest of judicial efficiency, the court will direct Nurse Phipps to submit within ten (10) days her response to plaintiff's motion for partial summary judgment on liability and to submit any additional dispositive motion of her own in a timely fashion so that the court may avoid a piecemeal disposition and promptly resolve the remaining issues. An appropriate order will enter this day.

---

[8] The defense of qualified immunity is not available in "cases . . . where injunctive relief is sought." Pearson, 555 U.S. at 242. Under this principle, qualified immunity provides no ground on which Nurse Phipps is entitled dismissal of Abdul-Mateen's claims for injunctive relief.

11

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 22nd day of February, 2012.

*/s/ Jsn Conrad*
Chief United States District Judge